The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 13 |
| TAMMY M. VANDYNE | ) |
| | ) CASE NO. 09-65200 |
| | ) |
| Debtor. | ) JUDGE RUSS KENDIG |
| | ) |
| | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |
| | ) |

    The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

    This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

    On March 30, 2011, chapter 13 trustee Toby L. Rosen ("trustee") filed a modification to debtor's plan ("modification") due to increased income on debtor's 2010 tax return. The modification asserts that debtor's plan payments should be raised from $563 per month to $1,775 per month with the payment to further increase when debtor's 401(k) loan is paid off. On May 11, 2011, the court held a hearing. At the hearing, the parties agreed to file briefs and allow the court to decide the matter without further notice or hearing.

    The court first considers debtor's argument regarding res judicata. Second, the court

considers the parties' arguments regarding income and expenses.

### A. Debtor's Res Judicata Argument

On May 13, 2010, the debtor and the trustee entered into an agreed order settling the trustee's objection to debtor's amended plan, and the court entered a confirmation order on the same day. Debtor now argues that because the trustee knew about debtor's circumstances at the time of the agreed order, the agreed order is res judicata on any subsequent attempt to modify the plan.

This argument is without merit. The debtor cites In re Storey, 392 B.R. 266 (B.A.P. 6th Cir. 2008) in support of her argument. However, Storey holds that modification is the *exception* to the general rule that plan confirmation is res judicata. Id. at 270. Furthermore, debtor's amended Schedules I and J, filed on March 31, 2011, show significant changed circumstances (such as food, transportation and charitable expenses) that the trustee could not have anticipated at the time of the agreed order.

### B. Debtor's Household Income

#### 1. Debtor's Income

Debtor manages a Burger King restaurant and is paid weekly. The parties are not far apart on debtor's income. In her amended Schedule J, debtor claims an monthly net income of $3,421. The trustee claims that, based on her review of debtor's pay stub with pay period ending June 12, 2011, debtor's monthly net income is $3,482.

The court adopts debtor's slightly lower estimate of her income. The trustee has not "shown her work" in computing debtor's monthly income and the court's independent analysis suggests a number more in line with debtor's estimate. Furthermore, debtor's pay stub includes $4,380.27 in year-to-date bonus. The trustee does not explain debtor's employer's policy regarding bonuses. Without this information, any year-to-date analysis of the debtor's pay stubs may prove unreliable. Accordingly, the court finds that debtor's income is $3,421 per month.

#### 2. Debtor's Spouse's Income

The confusion over debtor's spouse's income appears to stem from the fact that he works seasonally. It is undisputed that debtor nets approximately $2,691 per month from June through September. It is also undisputed that from October to May he recieves $330 per week, or $1,430 per month, in unemployment income. Debtor's spouse's income has followed this pattern for many years. Therefore, the court finds that debtor's husband's income is $2,691 from October to May and $1,430 per month from June to September.

Debtor argues in passing that debtor's husband's unemployment income should not used

2

in calculating plan payments. Debtor cites In re Sorrell, 359 B.R. 167 (Bankr. S.D. Ohio 2007). In Sorrell, the United States Trustee moved to dismiss the debtor on the basis that the debtor had above median income and had not overcome the presumption of abuse pursuant to 11 U.S.C. § 707(b)(2). Id. at 170–71. The court found that the presumption of abuse did not arise because, among other reasons, unemployment income was excluded from disposable income by 11 U.S.C. § 101(10A), which excludes "benefits received under the Social Security Act" from current monthly income Id. at 180–83. The court reasoned that state unemployment programs are "inextricably intertwined" with the Social Security Act because they must comply with the Social Security Act's numerous requirements. Id. Therefore, the court found that state unemployment payments were "received under" the Social Security Act. Id.

The court finds the debtor's argument unconvincing for two reasons. First, in Sorrell, the issue was whether the debtor passed the chapter 7 means test. At issue in this case is debtor's "projected disposable income." These are disparate issues. While the means test is strictly mechanical, projected disposable income is determined through a forward-looking determination of debtor's ability to pay. Hamilton v. Lanning, 130 S.Ct. 2464, 2469 (U.S. 2010). Debtor fails to explain how the holding in Sorrell is applicable to this case. Second, this court is skeptical of the Sorrell court's reasoning that unemployment benefits are "received under the Social Security Act" just because state unemployment programs are subject to certain provisions of the Social Security Act. Other courts have rejected this broad interpretation. In re Washington, 438 B.R. 348, 350 (M.D. Ala. 2010); In re Baden, 396 B.R. 317, 619 (Bankr. M.D. Pa. 2008). Finally, the court notes that the equities weigh heavily against debtor's husband, who, for a number of years, has used the unemployment insurance system as a surrogate for a job and not as a result of an unforseen job loss.

*C. Debtor's Household Expenses*

1. Status of Debtor's Adult Child

At confirmation, debtor's household size was three for purposes of the IRS National Standards for Allowable Living Expenses ("IRS Standards"). The household consisted of debtor, debtor's husband and debtor's son. Trustee now claims that debtor's son is no longer a member of debtor's household for purposes of the IRS Standards because debtor did not claim her son as a dependant on her 2010 tax return. Debtor argues that her son is still a dependant because he still lives at home while attending college.

The court sides with the debtors. The majority view is that, for purposes of the IRS Standards, a child who lives at home and attends college may be considered a member of the household. In re Gonzalez, 157 B.R. 604, 609 (Bankr. E.D. Mich 1993). This view is based on the reality that "it is commonly understood in present-day society that a child between the ages of 19 to 21 years of age who is pursuing an undergraduate degree is still his or her parents' 'dependant.'" Id. at 610. The fact that a child is no longer a deduction for tax purposes is a relevant consideration. However, in this case, it is undisputed that the debtor's son is living at

home while attending college and is still a member of the household.

## 2. Debtor's Expenses for Food, Clothing and Other Items

The trustee objects to debtor's monthly expenses for food in the amount of $700, clothing in the amount of $100, recreation in the amount $150 (a twofold increase since filing), "husband's bills" in the amount of $562 and cigarette expense in the amount of $300. These expenses total $1,812. The IRS Standards for three persons allow $1,172 for these expenditures. Thus, the debtor exceeds the IRS Standards by $640 per month.

While the IRS Standards are not dispositive, they provide evidence of reasonableness. In re McDonald, 437 B.R. 278, 291 n.14 (Bankr. S.D. Ohio 2010). In this case, the debtor provides no evidence to suggest that her expenditures in excess of the IRS Standards are reasonable. The court finds debtor's observation that cigarettes are addictive to be unpersuasive. Accordingly, the court finds that debtor's expenses for these items are excessive in the amount of $640 per month.

## 3. Debtor's Utilities

The trustee objects to debtor's gas, electric, sewage and home maintenance expenses, which total $505. The IRS Standards for three people allow $449 per month. Debtor provides no evidence to suggest that the amount in excess of the IRS Standards is reasonable. Accordingly, the court finds that debtor's expenses for these items are excessive in the amount of $56 per month.

## 4. Debtor's Transportation Expenses

The trustee objects to debtor's vehicle operating expenses, which total $650 per month. The IRS standards for two cars allow $424 per month. In her brief, the debtor explains that both she and her spouse have long commutes to work (when debtor's husband is working), which total 318 miles round trip. In light of this information, the court finds debtor's transportation expenses to be reasonable. Trustee is able to consider this factor in the future as debtor's husband's work location may be much closer.

## 5. Debtor's Automobile Insurance

The trustee objects to debtor paying her son's car insurance in the amount of $80 per month because her son is not a dependant. The court has resolved this issue in debtor's favor. Accordingly, the trustee's objection regarding debtor's son's auto insurance is overruled.

The trustee also objects to the insurance premiums on debtor's 1990 Eagle Talon and 1999 Mitsubishi Eclipse. In her brief, the debtor states that debtor's husband is driving the Talon to work instead of his Ford F250 to save money on gas. The court accepts this explanation. However, no explanation is provided regarding the Eclipse. Debtor has a 2008 Escape and does

09-65200-rk    Doc 57    FILED 08/19/11    ENTERED 08/19/11 16:40:22    Page 4 of 5

not explain why she needs another vehicle. Accordingly, the court finds that the debtor's insurance premium with regard to the Eclipse, which totals $31 per month, to be excessive.

*D. Calculation of Plan Payment*

The court has found debtor's total household income is $6,112 from June to September and $4,852 from October to May. Debtor's amended Schedule J lists total expenses of $3,927. The court has found that debtor's expenses are excessive in the amount of $727. Thus debtor's reasonable monthly expenses total $3,200. Thus, from June to September, debtor's household has $2,912 in projected disposable income, and from October to May debtor's household has $1,651 in projected disposable income.

The trustee is seeking to modify debtor's plan payment to $1,775 per month. This amount is slightly greater than debtors projected disposable income from October to May but substantially less than debtor's projected disposable income for the rest of the year. Debtor should be able to make this payment with only modest financial planning.

Accordingly, the trustee's modification is granted.

An order will accompany this opinion.

\#   \#   \#

Sevice List:

Tammy M VanDyne
4030 Burke Ave.
Louisville, OH 44641

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702

Donald R Little
1400 N Market Ave
Canton, OH 44714-2608